IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SPRING HOUSE TAVERN, INC., | : | CIVIL ACTION |
| INDIVIDUALLY AND ON BEHALF OF A | : | |
| CLASS OF SIMILARLY SITUATED | : | |
| PERSONS | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN   FIRE   AND   CASUALTY | : | |
| COMPANY | : | NO.  20-2872 |

## MEMORANDUM

**Padova, J.**                                                                October 30 , 2020

Plaintiff Spring House Tavern, Inc. ("Spring House") commenced this putative class action against American Fire and Casualty Company ("American Fire") seeking a declaration that it and the members of the class it seeks to represent are entitled to coverage under policies of insurance issued by American Fire for losses arising from the COVID-19 pandemic and also seeking an injunction enjoining American Fire from denying claims for such coverage. Spring House has filed a Motion for Judgment on the Pleadings, and American Fire has responded by asking that we dismiss that Motion pursuant to the rule against one-way intervention. For the reasons that follow, we dismiss the Motion without prejudice pending our determination as to class certification.

## I.      BACKGROUND[1]

The Complaint alleges the following facts.  American Fire issued a Commercial General Liability Policy (No. BKA (20) 56 10 25 39) (the "American Fire Policy") to Spring House, which owns and operates the Spring House Tavern.  (Compl. ¶¶ 2, 6.)  The American Fire Policy includes coverage for, inter alia, Business Income, Extra Expense, Contamination, and Civil Authority.  (Id.

---

[1] American Fire admits those portions of paragraphs 1, 6-7, 19-21, and 30 of the Complaint that we have summarized here.  American Fire denies the remaining material factual allegations of the Complaint.

¶ 6.)  The American Fire Policy was in effect and provided coverage to Spring House from June 1, 2019 to June 1, 2020.  (Id. ¶ 7.)

The COVID-19 pandemic has affected the ability of the public to congregate and gather in places such as restaurants.  (Id. ¶ 15.)  "On March 19, 2020, [Pennsylvania] Governor Tom Wolf issued an [o]rder requiring all non-life sustaining businesses in the Commonwealth to cease operation, and to close all physical locations."  (Id. ¶ 19.)  On March 23, 2020, Governor Wolf issued a Stay at Home order that applied to Montgomery County, Pennsylvania, where the Spring House Tavern is located.  (Id. ¶¶ 1-2, 20.)  The Stay at Home order was extended to the entire Commonwealth of Pennsylvania on April 1, 2020.  (Id. ¶ 22.)  These three orders are collectively referred to herein as the "Governor's COVID-19 Orders."

As a result of the COVID-19 pandemic and the Governor's COVID-19 Orders, Spring House "has been ordered to close its business and forced to furlough employees."  (Id. ¶ 24.)  Many similarly situated businesses have also been ordered to close and have suffered similar losses.  (Id. ¶ 25.)  Consequently, Spring House's business operations have been directly and adversely affected by the COVID-19 pandemic and it "and other similarly situated businesses, have suffered Business Income, Extra Expense, Civil Authority and other related losses which it avers are covered by policies of insurance issued by Defendant American Fire."  (Id. ¶¶ 28-29.)

Spring House has made a claim pursuant to the American Fire Policy, seeking to recover its losses arising from the COVID-19 pandemic and the Governor's COVID-19 Orders.  (Id. ¶ 30.)  American Fire has denied Spring House's claim, as well as claims made by all similarly situated persons and entities. (Id. ¶ 33.)

Believing the coverage denials to be contrary to the terms of the American Fire Policy, Spring House commenced this action seeking a remedy for itself and also seeking to represent the following class:

> Pennsylvania citizens who have sustained covered losses caused by the COVID-19 pandemic and the [Governor's COVID-19 Orders] where: (a) Defendant, American Fire, issued a policy of insurance providing, *inter alia*, Business Income, Extra Expense, Contamination, Civil Authority and other applicable coverages to each class member; (b) the putative class members have suffered covered losses under those policies by reason of the COVID-19 pandemic and referenced Orders; and (c) Defendant, American Fire, has disclaimed coverage and/or refused to acknowledge coverage under the policy in question for the loss."

(Id. ¶ 38.)

The Complaint asserts two claims for relief on behalf of Spring House and the putative class. Count I seeks a declaration that Spring House and all members of the putative class are entitled to coverage under the applicable policy issued by American Fire for the losses they have suffered as a result of the COVID-19 pandemic and the Governor's COVID-19 Orders. Count II seeks an order enjoining American Fire from continuing to deny coverage to Spring House and the putative class for their losses caused by the COVID-19 pandemic and the Governor's COVID-19 Orders.

After American Fire answered the Complaint, Spring House filed the instant Motion for Judgment on the Pleadings. It asks that we enter judgment in its favor on both Counts of the Complaint, declare that it is entitled to Business Income and Civil Authority coverages for "continuing normal operating expenses" under the American Fire Policy, and enjoin American

3

Fire from continuing to deny its claim for coverage.  (Mot. at 3.)  American Fire opposes the

Motion, arguing, inter alia, that the Motion violates the rule against one-way intervention.[2]

## II.      THE RULE AGAINST ONE-WAY INTERVENTION

The rule against one-way intervention pertains to class actions brought pursuant to Federal

Rule of Civil Procedure 23.  The Supreme Court has noted that, prior to the 1966 amendments to

Rule 23, potential class members could take advantage of the Rule's failure to include a time

limitation for seeking class certification by "await[ing] developments in the trial or even final

judgment on the merits in order to determine whether participation would be favorable to their

interests."  Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 547 (1974).  Thus, "[i]f the evidence at

the trial made their prospective position as actual class members appear weak, or if a judgment

precluded the possibility of a favorable determination, such putative members of the class who

chose not to intervene or join as parties would not be bound by the judgment."  Id.  "This

situation—the potential for so-called 'one-way intervention'—aroused considerable criticism

upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment

without subjecting themselves to the binding effect of an unfavorable one."  Id.

The 1966 amendments to Rule 23 required a district court to make "a determination

whether an action shall be maintained as a class action . . . '(a)s soon as practicable after the

commencement of an action brought as a class action . . . .'"  Id. (quoting Fed. R. Civ. P.

23(c)(1)(A)).  The Supreme Court explained that these "amendments were designed, in part,

specifically to mend this perceived defect in the former Rule and to assure that members of the

class would be identified before trial on the merits and would be bound by all subsequent orders

---

[2] American Fire also opposes the instant Motion on the merits.  However, we will not
address the merits at this juncture as we dismiss the Motion without prejudice in accordance with
the rule against one-way intervention.

and judgments." Id. (citation omitted).  Thus, the purpose of the 1966 Amendments to Rule 23 was to eliminate one-way intervention because it was unfair to the defendant.  Katz v. Carte Blanche Corp., 496 F.2d 747, 759 (3d Cir. 1974) ("To meet the point that one-way intervention was unfair to the defendant, the Advisory Committee on the Federal Rules concluded that class members should be brought in prior to the determination of defendant's liability, thus making the estoppel mutual."  (citations omitted)).  While a defendant may waive the protection of the rule against one-way intervention, as it is embodied in Rule 23(a)(1)(A), if it "insists upon early class action determination and notice, [it] is, under the rule, entitled to it." Id. at 762.

Rule 23 was amended again, in 2003, to provide "that certification be determined 'at an early practicable time.'"  Koehler v. USAA Cas. Ins. Co., Civ. A. No. 19-715, 2019 WL 4447623, at *4 (E.D. Pa. Sept. 17, 2019 (quoting Fed. R. Civ. P. 23(c)(1)(A)).  The "change was made to reflect the 'many valid reasons that may justify deferring the initial certification decision,'" including the possibility that "'*the party opposing the class [i.e., the defendant]* may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified.'" Id. (alteration in original) (quoting Fed. R. Civ. P. 23 advisory committee's note).  However, the Advisory Committee's Note "makes clear that the purpose of the 2003 Amendments was not to 'restore the practice of one-way intervention that was rejected by the 1966 revision.'"  Id. at *5 (quoting Fed. R. Civ. P. 23 advisory committee's note).  Consequently, "Rule 23 'still disfavor[s] one-way intervention' and counsels against a court 'rul[ing] on motions that encroach on the merits of a final decision before class certification.'"  Id. (alterations in original) (quoting Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc., Civ. A. No. 08-1330, 2015 WL 790081, at *2 (D. Kan. Feb. 25, 2015)).

### III.   DISCUSSION

American Fire has not waived the rule against one-way intervention in this case and argues that the rule is implicated here because Spring House asks the Court to decide issues that would be common to members of the putative class in connection with the instant Motion.  American Fire relies on <u>Koehler</u>, in which the court determined that the plaintiff's pre-certification motion for partial summary judgment, which sought "a pre-certification ruling on the merits of Plaintiff's individual declaratory judgment claim," implicated the rule against one-way intervention, because the relief sought by the plaintiff, i.e., "a declaration of coverage notwithstanding the . . . exclusion in the policy issued by Defendant[,] . . . would undoubtedly impact, if not fully resolve, the merits of the class claims, which likewise seek a declaration of coverage . . . on behalf of those insureds who have been denied benefits based on the Defendant's . . . exclusion." <u>Id.</u>  The <u>Koehler</u> court concluded that, "[b]ecause a decision on Plaintiff's motion will impact the merits of Plaintiff's class claims, Defendant is 'entitled' to have a ruling on the merits motion deferred until after class certification, so that the currently-absent class members will also be bound." <u>Id.</u> (citing <u>Katz</u>, 496 F.2d at 762).

American Fire contends that the relief Spring House seeks through the instant Motion would be applicable to the putative class as well as to Spring House's individual claims.  In the Memorandum it filed in support of its Motion for Judgment on the Pleadings, Spring House asks us to interpret provisions of the American Fire Policy that relate to its claim for coverage for losses it suffered related to the COVID-19 pandemic.  For example, Spring House specifically seeks a determination as to the meaning of the term "loss" in the American Fire Policy.  It also asks us to rule that the American Fire Policy covers losses that resulted from the Governor's COVID-19 Orders.  We conclude that the rulings Spring House seeks with respect to the American Fire Policy

could be generally applicable to members of the putative class and would be relevant to the merits of the claims of the putative class members and implicate the rule against one-way intervention. See Koehler, 2019 WL 4447623, at *5 ("The rule against one-way intervention is implicated whenever a plaintiff seeks a ruling on an issue relevant to the merits of the class claims." (citing Diva Limousine, Ltd. v. Uber Techs., Inc., Civ. A. No. 18-5546, 2019 WL 2548459, at *13–14 (N.D. Cal. June 20, 2019))).

Plaintiff argues that the rule against one-way intervention is not implicated in this case because it has brought this case pursuant to Federal Rule of Civil Procedure 23(b)(2), rather than 23(b)(3). The difference between these subsections of Rule 23 is that individual class members in a Rule 23(b)(3) class may seek to opt-out from the class in the event of an unfavorable pre-certification decision whereas individual class members in a Rule 23(b)(2) class cannot opt-out. See Fed. R. Civ. P. 23(c)(2). Plaintiff relies on Gooch v. Life Investors Insurance Company of America, 672 F.3d 402 (6th Cir. 2012), in which the United States Court of Appeals for the Sixth Circuit concluded that the district court had not abused its discretion when it certified a Rule 23(b)(2) class after issuing a preliminary injunction, stating that it found "no support for applying the prohibition on one-way intervention to Rule 23(b)(2) certifications." Id. at 433 (citation omitted). However, as the Koehler court explained, a pre-certification ruling on the merits of a plaintiff's claim in a putative Rule 23(b)(2) class action "is still unfair to the defendant, because while the class members may not be able to opt out, 'the named plaintiff[] can still hedge [her] bets *by opting not to seek class certification* if [she] receive[s] an unfavorable pre-certification ruling.'" Koehler, 2019 WL 4447623, at *6 (alterations in original) (quoting Diva Limousine, 2019 WL 2548459, at *14). Thus, if we decide the instant Motion before class certification, and "deny [the Motion], that unfavorable decision will not bind the currently absent class members,

and Plaintiff could simply decide not to pursue class certification, allowing other members of the class to try again by filing their own lawsuits.  That is the possibility that the rule against one-way intervention seeks to prevent."  Id. at *7.  We conclude, accordingly, that the rule against one-way intervention is implicated by Spring House's  Motion for Judgment on the Pleadings, which seeks a ruling on the merits of issues relevant to the claims of the putative class members prior to class certification, even though it has brought the instant action pursuant to Rule 23(b)(2).

Spring House also asserts that we should decide the Motion for Judgment on the Pleadings even if it implicates the rule against one-way intervention, because deciding the Motion early in the litigation "will advance the litigation while serving the interests of judicial economy and fairness."  (Pl.'s Reply at 2.)  In support of this argument, Spring House suggests that, if we were to determine that there is no coverage under the American Fire Policy for losses due to the COVID-19 pandemic and the Governor's COVID-19 Orders and deny the Motion, "the case would be over for all intents and purposes for Spring House and all persons with the same insurance policy" because "[n]o rational counsel, or their clients, would bring another action based on the same insurance policy."  (Id. at 3.)  However, we cannot base our decision on Plaintiff's conjecture as to what other counsel might do.  "American Fire and Casualty Company [has] issued business insurance policies to 687 Pennsylvania businesses/citizens that were in effect as of January 1, 2020."  (Sheridan Decl. (Docket No. 1-2) ¶ 3.)  As Defendant points out, a ruling in favor of American Fire on the merits of Plaintiff's claims would not act as a legal bar to the other 686 policy holders, who could decide to take their chances in new lawsuits brought before other judges in other courts.

**IV.    CONCLUSION**

We conclude, for the reasons stated above, that Plaintiff's Motion for Judgment on the Pleadings implicates the rule against one-way intervention.  Accordingly, we dismiss the Motion without prejudice to Plaintiff filing a new Motion for Judgment on the Pleadings after we address class certification.


BY THE COURT:


/s/ John R. Padova
_____
John R. Padova, J.