IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SPRING HOUSE TAVERN, INC., | : | CIVIL ACTION |
| INDIVIDUALLY AND ON BEHALF OF A | : | |
| CLASS OF SIMILARLY SITUATED | : | |
| PERSONS | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN FIRE AND CASUALTY | : | |
| COMPANY | : | NO.  20-2872 |

## MEMORANDUM

**Padova, J.**                                                                                          June 16, 2021

   Plaintiff Spring House Tavern, Inc. ("Spring House") has brought this putative class action

against American Fire and Casualty Company ("American Fire") seeking (1) a declaration that it

and the members of the class it seeks to represent are entitled to coverage under  insurance policies

issued by American Fire for losses arising from the COVID-19 pandemic (Compl. Count I) and

(2) an injunction enjoining American Fire from denying their claims for coverage under those

policies for losses arising from the COVID-19 pandemic (Compl. Count II).  American Fire has

filed a Motion for Judgment on the Pleadings, seeking dismissal of Spring House's claims.

American Fire maintains that the Complaint fails to allege facts that would entitle Spring House

to coverage under the relevant insurance policy and that Spring House's claim of loss is

specifically excluded under that policy.  For the reasons that follow, we grant the Motion.

## I.      BACKGROUND

   The Complaint alleges the following facts.  American Fire issued a Commercial General

Liability Policy (No. BKA (20) 56 10 25 39) (the "American Fire Policy") to Spring House.

(Compl. ¶ 6.)   The American Fire Policy includes Business Income (And Extra Exprense),

Contamination, Civil Authority, and additional coverages.  (Id.; Ex. A.)  The American Fire Policy

was in effect and provided coverage to Spring House from June 1, 2019 to June 1, 2020.  (Id. ¶ 7.)
During that time, the COVID-19 pandemic affected "the ability of the public to congregate and
gather."  (Id. ¶ 15.)  "On March 19, 2020, Governor Tom Wolf issued an Order requiring all non-
life sustaining businesses in the Commonwealth to cease operation and to close all physical
locations."  (Id. ¶ 19.)  On March 23, 2020, Governor Wolf issued a Stay at Home Order that
applied to Montgomery County, Pennsylvania, where Spring House is located.  (See id. ¶¶ 1, 20.)
The Stay at Home Order was extended to the entire Commonwealth of Pennsylvania on April 1,
2020.  (Id. ¶ 22.)  These three orders are collectively referred to herein as the "Governor's COVID-
19 Orders."

Spring House closed its business and furloughed its employees as a result of the COVID-
19 pandemic and the Governor's COVID-19 Orders.  (Id. ¶ 24.)  Consequently, Spring House's
business operations have been directly and adversely affected by the COVID-19 pandemic and it
has suffered Business Income, Extra Expense, Civil Authority and other related losses which it
alleges are covered by the American Fire Policy.  (Id. ¶¶ 28-29.)

Spring House has made a claim on its American Fire Policy for recovery of its losses arising
from the COVID-19 pandemic and the Governor's COVID-19 Orders and American Fire has
denied that claim.  (Id. ¶¶ 30-33.)  Nonetheless, Spring House maintains that it is entitled to a
declaration that American Fire's insurance policies provide Business Income (And Extra
Expense), Contamination, and Civil Authority coverage for losses caused by the COVID-19
pandemic and the Governor's COVID-19 Orders.  (Id. ¶¶ 31, 34.)  Spring House also asserts that
it is entitled to an order enjoining American Fire from denying its claims for Business Income
(And Extra Expense), Contamination, and Civil Authority coverage for losses caused by the
COVID-19 pandemic and the Governor's COVID-19 Orders.  (Id. ¶ 35.)

2

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "'A motion for judgment on the pleadings will be granted . . . if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law.'"  Fed Cetera, LLC v. Nat'l Credit Servs., Inc., 938 F.3d 466, 470 n.7 (3d Cir. 2019) (alteration in original) (quoting DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262 (3d Cir. 2008)) (citing Fed. R. Civ. P. 12(c)).  The court "accept[s] the nonmoving party's factual allegations as true and construe[s] all allegations in the light most favorable to that party."  Id. (citing DiCarlo, 530 F.3d at 262).  "A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'"  Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quoting Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010)); see also Jenkins v. SEPTA, 801 F. App'x 71, 72 (3d Cir. 2020) ("The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)."  (citing Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004))).  Therefore, we "must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,'" and we may only grant a motion for judgment on the pleadings if "'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  Wolfington, 935 F.3d at 195 (quoting In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016)).  "Thus, in deciding a motion for judgment on the pleadings, a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'"  Id. (citing Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir.

2010)).  Legal conclusions, however, receive no deference, as we are "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## III.    DISCUSSION

American Fire argues that it is entitled to judgment on the pleadings because Spring House has not satisfied the requirements for Business Income (And Extra Expense), Contamination, and Civil Authority Coverages under the American Fire Policy.    American Fire also argues that , even if Spring House were otherwise entitled to coverage, its losses arising from the COVID-19 pandemic are excluded under the Policy's Virus Exclusion.  "Under Pennsylvania law, '[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement.'"  Wilson v. Hartford Cas. Co., 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020) (alteration in original) (footnote omitted) (quoting In re Old Summit Mfg., LLC, 523 F.3d 134, 137 (3d Cir. 2008)) (add'l citations omitted).  "When the language of an insurance policy is clear and unambiguous, a court applying Pennsylvania law is required to give effect to that language."  Id. (citing 401 Fourth St., Inc. v. Inv'rs Ins. Grp., 879 A.2d 166, 171 (Pa. 2005); Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc., 105 F. Supp. 3d 464, 471 (E.D. Pa. 2015)).  However, if the terms used in an insurance policy "are open to more than one interpretation, they are regarded as ambiguous."  Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 677 (3d Cir. 2016) (citing Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999)).  "It is well established that '[a]mbiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control.'"  Id. (alteration in original) (citing Med. Protective, 198 F.3d at 104).  However, "[c]ourts may not 'distort the meaning of the language or resort to a strained contrivance

4

in order to find an ambiguity.'"  Wilson, 492 F. Supp. 3d at 426 (quoting Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

"Ordinarily in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does."  State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (citing Koppers Co. v. Aetna Cas. and Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996)).  Under Pennsylvania law, "exclusions are strictly construed against the insurer."  Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998) (citations omitted).

    A.    Business Income (And Extra Expense) Coverage

The American Fire Policy's Business Income (And Extra Expense) Coverage Form provides that American Fire "will pay for the actual loss of Business Income [Spring House] sustain[s] due to the necessary 'suspension', of [its] 'operations' during the 'period of restoration'." (American Fire Policy (Compl. Ex. A), Form CP 00 30 10 12 at 1 (Docket No. 7-2 at 97 of 167).)  However, that coverage is only available if "[t]he 'suspension' [was] caused by direct physical loss of or damage to property at premises which are described in the Declarations" and "[t]he loss or damage [was] caused by or result[ed] from a Covered Cause of Loss."  (Id.) Thus, in order to recover for the losses it suffered as a result of the COVID-19 pandemic and the Governor's COVID-19 Orders under the American Fire Policy's Business Income (And Extra Expense) Coverage, Spring House must make a prima facie showing that it suffered "direct physical loss of or damage to [covered] property" caused by or resulting from a "Covered Cause of Loss."  (Id.)

American Fire argues that it is entitled to judgment in its favor with respect to Spring House's claims related to Business Income (And Extra Expense) Coverage because the Complaint does not allege that Spring House suffered direct physical loss of or damage to its property. American Fire maintains that the terms "direct" and "physical" modify both "loss" and "damage" so that the Complaint must allege either direct physical loss or direct physical damage to the covered property. See Frank Van's Auto Tag, LLC v. Selective Ins. Co., Civ. A. No. 20-2740, 2021 WL 289547, at *4 (E.D. Pa. Jan. 28, 2021) ("As a starting point, both the words 'direct' and 'physical' modify 'loss of property' and 'damage to property.'" (citing Phila. Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005))). As a recent decision of this Court explained, the phrase "direct physical loss of or direct physical damage to property" "is crafted in the disjunctive, meaning there must either be 'direct physical loss' or 'direct physical damage to the property.'" Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co., Civ. A. No. 20-2171, 2021 WL 1945712, at *5 (E.D. Pa. May 14, 2021) (quoting Frank Van's Auto Tag, LLC, 2021 WL 289547, at *4).

The Complaint alleges that "[a]s a result of the impact of the COVID-19 pandemic and the referenced Orders of the Governor, Plaintiff, Spring House, has been ordered to close its business . . . thereby incurring loss." (Compl. ¶ 24.) American Fire contends that the Complaint thus alleges that Spring House's claims arise from the suspension of its operations due to the Governor's COVID-19 Orders, not from "direct physical loss of or damage to" covered property and, thus, Spring House is not entitled to coverage under the American Fire Policy. As the Hair Studio 1208 Court explained, "[d]irect physical damage is 'a distinct, demonstrable, physical alteration of the property.'" 2021 WL 1945712, at *6 (quoting Newchops Rest. Comcast LLC v. Admiral Indem. Co., Civ. A. Nos. 20-1949, 20-1869, 2020 WL 7395153, at *5 (E.D. Pa. Dec. 17, 2020)). "'Pure

economic losses are intangible and do not constitute property damage.'" Id. (quoting Newchops, 2020 WL 739515, at *5).  "'Direct physical loss,' on the other hand, exists when a structure has been rendered 'uninhabitable and unusable,' causing the owner to suffer a 'distinct loss.'"  Id. (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 235 (3d Cir. 2002)). Thus, if the insured's "'structure continues to function' there is no physical loss that would be eligible for coverage."  Id. (quoting Port Auth., 311 F.3d at 235).  "Stated differently, '[t]he words "direct" and "physical," which modify the word "loss," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure.'"  Id. (alteration in original) (quoting Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co., Civ. A. No. 20-3463, 2021 WL 633356, at *2 (N.D. Ill. Feb. 18, 2021)).

Spring House, however, maintains that the terms of the American Fire Policy may be reasonably understood to mean that "direct physical loss of or damage to property" encompasses the loss of use of the covered property, so that it need not have suffered actual physical harm to its property in order to obtain coverage.  Spring House asserts that, since its alternative understanding of these terms is reasonable, the terms are ambiguous and its interpretation controls.  See Ramara, 814 F.3d at 667 (stating that, if the terms used in an insurance policy "are open to more than one interpretation, they are regarded as ambiguous" and, since "'[a]mbiguous provisions in an insurance policy must be construed against the insurer . . . any reasonable interpretation offered by the insured, therefore, must control'" (alteration in original) (citing Med. Protective, 198 F.3d at 103, 104)).  However, Spring House has identified no authority in this Circuit, or decision of the Superior Court or Supreme Court of Pennsylvania, that supports its position.  Spring House has identified only one, non-precedential, decision of a Pennsylvania Court of Common Pleas that has

adopted its position with respect to the meaning of "direct physical loss of or damage to property." In <u>Ungarean, DMD v. CNA</u>, No. GD-20-006544, 2021 WL 1164836 ( Allegheny Cty. Ct. Common Pleas Mar. 22, 2021), the plaintiff, a dentist, sought coverage under his business insurance policy after he closed the majority of his business operations as a result of the COVID-19 pandemic and the Governor's COVID-19 orders.  <u>Id.</u> at *1-2.  The defendants denied his claim and the plaintiff brought a declaratory judgment action against them, seeking a declaration that he was "entitled to coverage under the insurance contract with Defendants for losses [he] sustained in relation to the spread of COVID-19 and the Governor's orders." <u>Id.</u> at *2.  The business income and extra expense coverage under the <u>Ungarean</u> insurance policy, like the Business Income (And Extra Expense) Coverage in this case, specified that the suspension of the plaintiff's operations "must be caused by direct physical loss of or damage to property." <u>Id.</u> at *5.  Although the defendants in <u>Ungarean</u> maintained that the phrase "direct physical loss of or damage to property" required "physical alteration [sic] of or demonstrable harm to Plaintiff's property," the <u>Ungarean</u> Court found that "the most reasonable definition of 'loss' is one that focuses on the act of losing possession and/or deprivation of property instead of one that encompasses various forms of damage to property." <u>Id.</u> at *5-6.  The <u>Ungarean</u> Court further found that the "[p]laintiff's loss of use of its property" as a result of COVID-19 "was both 'direct' and 'physical,'" and caused more than solely economic limitations, because the spread of COVID-19 and the Governor's orders "caused Plaintiff . . . to *physically* limit the use of property and the number of people that could inhabit *physical* buildings at any given time."[1] <u>Id.</u> at *7.

---

[1] We note that this decision has been appealed.  <u>See</u> <u>Ungarean v. CNA</u>, No. 490 WDA 2021 (Pa. Super. Ct.).

However, this non-precedential decision of the Allegheny County Court of Common Pleas did not consider the decisions of the United States Court of Appeals for the Third Circuit regarding this policy language, which we follow.  The Third Circuit directly considered whether "loss of use may constitute a physical loss" in Motorists Mutual Insurance Company v. Hardinger, 131 F. App'x 823 (3d Cir. 2005), a case concerning whether losses caused by the contamination of a well with e-coli bacteria were covered by a homeowner's insurance policy.  Id. at 824, 826.  The Third Circuit determined that "where sources unnoticeable to the naked eye have allegedly reduced the use of the property to a substantial degree" coverage would be available if "the functionality of [the homeowner's] property was nearly eliminated or destroyed, or [if] their property was made useless or uninhabitable."  Id. at 826-27; see also Port Auth., 311 F.3d at 236 (concluding, in the context of asbestos contamination, that "if asbestos is present in components of a structure, but is not in such form or quantity as to make the building unusable, the owner has not suffered a loss. The structure continues to function—it has not lost its utility" (footnote omitted)); Kahn v. Pa. Nat'l Mut. Cas. Ins. Co., Civ. A. No. 20-781, 2021 WL 422607, at *6-8 (M.D. Pa. Feb. 8, 2021) (dismissing restaurant owner's clam for business income coverage based on allegations that the restaurant was forced to close due to pandemic related stay-at-home orders because the complaint did not allege that the building "suffered any kind of physical or structural impairment as required to fall under the Business Income coverage provision. To rule here that a building without any presence of the COVID-19 virus was rendered physically or functionally unusable such that Plaintiffs sufficiently alleged a "distinct loss" would squarely contradict the Third Circuit's holding in Port Authority").  Therefore, following the relevant decisions in this Circuit, we conclude that Plaintiff's proffered interpretation of the phrase "direct physical loss of or damage

to property" to include the loss of use of the property is not a reasonable alternative interpretation. Thus, Plaintiff's interpretation of this phrase does not control our analysis.

The Complaint in this case does not allege that any amount of the COVID-19 virus was, itself, present in Plaintiff's property, or that some amount of the COVID-19 virus itself made Plaintiff's property "physically unusable." Kahn, 2021 WL 422607, at *6.  The Complaint only alleges that Plaintiff was unable to use its property because of the COVID-19 pandemic and the Governor's resulting COVID-19 Orders. (Compl. ¶ 24.)   We conclude, accordingly, that the Complaint does not allege that Plaintiff suffered "direct physical loss of or damage to property" as a result of the COVID-19 pandemic or the Governor's COVID-19 Orders as required for coverage under the American Fire Policy's Business Income (And Extra Expense) Coverage Forms.  We therefore grant the Motion for Judgment on the Pleadings as to Plaintiff's claim for a declaration that it is entitled to coverage under the American Fire Policy's Business Income (And Extra Expense) Coverage Forms and for an order enjoining American Fire from denying Plaintiff's claim for such coverage.  We note that the following decisions from the district courts in this Circuit which interpret identical policy language in the context of lawsuits seeking insurance coverage for losses suffered as a result of the COVID-19 pandemic and the same or similar governmental orders support our decision.  See, e.g., Brian Handel D.M.D., P.C. v. Allstate Ins. Co., 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020) (granting motion to dismiss complaint arising from denial of plaintiff's claims for business income and extra expense coverage due to the near closure of plaintiff's dental practice during the COVID-19 pandemic because "plaintiff's property remained inhabitable and usable, albeit in limited ways" so that the complaint "failed to plead plausible facts that COVID-19 caused damage or loss in any physical way to the property so as to trigger coverage" (citing Hardinger, 131 F. App'x at 826-27)); 4431, Inc. v. Cincinnati Ins. Cos., Civ. A. No. 20-4396, 2020

WL 7075318, at *11 (E.D. Pa. Dec. 3, 2020) (granting motion to dismiss complaint arising from insurer's denial of coverage for restaurant plaintiffs' claims for business income coverage resulting from the Governor's COVID-19 orders because "under Pennsylvania law, for Plaintiffs to assert an economic loss resulting from their inability to operate their premises as intended within the coverage of the Policy's 'physical loss' provision, the loss and the bar to operation from which it results must bear a causal relationship to some *physical condition* of or on the premises."); Kessler Dental Assocs., P.C. v. Dentists Ins. Co., Civ. A. No. 20-3376, 2020 WL 7181057, at *4 (E.D. Pa. Dec. 7, 2020) (granting motion to dismiss declaratory judgment and breach of contract claims arising from denial of insurance coverage for losses sustained due to COVID-19 shutdown orders where the complaint "d[id] not allege that Covid-19 was present on [plaintiff's] premises or that it made the structure unusable"); Newchops , 2020 WL 7395153, at *5 (granting motion to dismiss complaint seeking insurance coverage for plaintiff's business losses resulting from the City of Philadelphia's and Governor's COVID-19 shutdown orders where the complaint failed to allege physical damage to the insured's property);  Humans & Resources, LLC v. Firstline Nat'l Ins. Co., Civ. A. No. 20-2152, 2021 WL 75775, at *7 (E.D. Pa. Jan. 8, 2021) (granting motion to dismiss complaint seeking business interruption coverage after plaintiff was required to close its restaurant due to the Governor's and Mayor of Philadelphia's COVID-19 closure orders because "for Plaintiffs to assert an economic loss resulting from their inability to operate their premises as intended within the coverage of the Policy's 'physical loss' provision, the loss and the bar to operation from which it results must bear a causal relationship to some *physical condition* of or on the premises and that the premises must be uninhabitable and unusable, or nearly as such"); ATCM Optical, Inc. v. Twin City Fire Ins. Co., Civ. A. No. 20-4238, 2021 WL 131282, at *5 (E.D. Pa. Jan. 14, 2021) (granting motion to dismiss the plaintiff's claim for insurance coverage for its losses

due to the Governor's COVID-19 Orders because, under Pennsylvania law, "while structural damage is not required to show 'direct physical loss of' or damage to property, the source that destroys, or nearly destroys, the property's utility must have something to do with the physical condition of the premises"); Moody v. Hartford Fin. Grp., Inc., Civ. A. No. 20-2856, 2021 WL 135897, at *6 (E.D. Pa. Jan. 14, 2021) (granting motion to dismiss claim for business interruption and extra expense coverage for losses resulting from the COVID-19 shutdown orders because "[n]either the presence of the virus nor an imminent threat thereof . . . has 'nearly eliminated or destroyed' the property's functionality or rendered it 'useless or uninhabitable'" (quoting Hardinger, 131 F. App'x at 826-27)); Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co., Civ. A. No. 20-5271, 2021 WL 1210000, at *5 (E.D. Pa. Mar. 31, 2021) (granting motion to dismiss plaintiff's suit seeking coverage under his policy's civil authority, business income, and extra expense coverages after he shut down his practice due to the COVID-19 shutdown orders because "the language [of the policy] is not ambiguous. The loss or damage must be physical"); Hair Studio 1208, 2021 WL 1945712, at *9 (granting motion to dismiss claim for business interruption and extra expense coverage arising from plaintiff's closure of its business as a result of the Governor's COVD-19 shutdown orders because "[a]bsent some sort of direct physical loss or direct physical damage to Plaintiff's Property, Plaintiff has not met its burden of proof of showing a covered loss under the Policy").

  B. <u>Contamination Coverage</u>

  The American Fire Policy provides coverage (1) for loss of "'perishable stock'" due to "[c]hange in temperature or humidity Resulting from mechanical breakdown or mechanical failure of refrigerating . . . apparatus or equipment," or "'Contamination by the refrigerant'" under the Spoilage Coverage Endorsement, (2) "[i]f the Board of Health or other government body orders

your locations closed because of the discovery of, or suspicion of 'food contamination,'" which is defined as "the occurrence of food poisoning or suspected food poisoning . . . resulting from tainted food purchased by you, or a 'communicable disease,'" which is defined as "a bacterial microorganism transmitted through human contact with food" which was transmitted by one of the insured's employees under the Property Extension Plus for Restaurants Endorsement; and (3) physical damage to Covered Property "because of contamination by a 'hazardous substance'" or "due to contamination from the release of a refrigerant" under the Equipment Breakdown Coverage Endorsement.  (American Fire Policy, Forms CP 04 40 06 07 at 1; CP 88 30 02 15 at 5-6; and CP 88 44 02 15 at 1-2 (Docket No. 7-2 at 110-11, 129-130, and 146-47 of 167).)  American Fire argues that it is entitled to judgment on the pleadings as to Plaintiff's claim for a declaration that it is entitled to coverage under the American Fire Policy's contamination coverage because the Complaint does not allege any facts that would bring its claims within the scope of any of these contamination coverages.  (Id.)  The Complaint does not allege loss of perishable stock due to a mechanical breakdown, contamination by a refrigerant, food contamination, or that the Covered Property was contaminated by a hazardous substance.  Accordingly, we grant the Motion for Judgment on the Pleadings as to Plaintiff's claim for a declaration that it is entitled to coverage under the American Fire Policy's contamination coverage and its claim that it is entitled to an injunction preventing American Fire from denying coverage for contamination.

C.      Civil Authority Coverage

The American Fire Policy provides Civil Authority Coverage "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises."  (American Fire Policy, Form CP 00 30 10 12 at 2 (Docket No. 7-2 at 98 of 167).)  However, that coverage is only available if both of the following provisions apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Id.)  American Fire argues that, pursuant to this policy language, coverage is only available if there is a Covered Cause of Loss which caused damage to property other than the described premises that is located not more than one mile from the described premises.  American Fire maintains that it is entitled to judgment as a matter of law with respect to Plaintiff's claim for Civil Authority Coverage because the Complaint fails to allege a dangerous physical condition or damage to property within a one-mile geographical nexus of Spring House's property.  See Kessler Dental Assocs., 2020 WL 7181057, at *4 (granting insurance company's motion to dismiss the plaintiff's claim for civil authority coverage because the plaintiff's economic losses did not result from "damage to a nearby premise or because there was some dangerous physical condition at another nearby premise.  They came when state and local authorities ordered the closure of all non-life sustaining business in Pennsylvania and to help stop the spread of Covid-19").

The Complaint does not allege that Plaintiff was unable to access its property because of dangerous physical conditions within one mile of its property.  The Complaint also does not allege that any property within one mile of Plaintiff's property was damaged by COVID-19 or had another dangerous physical condition.  We thus grant the Motion for Judgment on the Pleadings as to Plaintiff's claim for a declaration that it is entitled to coverage under the American Fire Policy's Civil Authority Coverage Form and its request for an order enjoining American Fire from denying its request for coverage under the Policy's Civil Authority Coverage Form.  See Newchops, 2020 WL 7395153, at *6 (granting motion to dismiss claim for civil authority coverage

14

where the "insureds d[id] not allege damage to nearby properties . . . that was the result of a covered loss.  The shutdown orders and accompanying proclamations were in response to the COVID-19 health crisis, not damage to any property"); TAQ Willow Grove, LLC v. Twin City Fire Ins., Civ. A. No. 20-3863, 2021 WL 131555, at *6 (E.D. Pa. Jan. 14, 2021) ("To trigger coverage under the civil authority provision, a covered cause of loss must damage another property in the immediate area of the insured property, prompting a civil authority to respond to the covered cause of loss."); Paul Glat MD, P.C., 2021 WL 1210000, at *6 (granting motion to dismiss claim for civil authority coverage because the COVID-19 "shutdown orders and accompanying proclamations were in response to the COVID-19 health crisis, not to physical loss of or damage to any property – Glat's or another's"); Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co., Civ. A. No. 20-2034, 2021 WL 1667424, at *9-10 (E.D. Pa. Apr. 28, 2021) (granting motion to dismiss claim for civil authority coverage where the complaint failed to "allege[] the presence of COVID-19 at any neighboring properties" and "the relevant Closure Orders were not issued in response to 'dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss'" but "were issued *prevent* the spread of the COVID-19 virus to any of these properties") (citation omitted)); RDS Vending LLC v. Union Ins. Co., Civ. A. No. 20-3928, 2021 WL 1923024, at *5 (E.D. Pa. May 13, 2021) (granting motion to dismiss claim for civil authority coverage because "the civil authority provision requires a nearby property to be damaged, and that the action by the civil authority be as 'a result of the damage.'  Governor Wolf's Stay-at-Home Order was due to the general existence of COVID-19 throughout Pennsylvania, and not because of some 'damage' to a particular property"); Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co., Civ. A. No. 20-6165, 2021 WL 1945713, at *5 (E.D. Pa. May 14, 2021) (granting motion for judgment on the pleadings as to claim for civil authority coverage because the complaint "d[id] not allege that

a civil authority ordered the closure of [plaintiff's] business due to physical damages or losses at a nearby property" (citation omitted)).

      D.      <u>The Virus Exclusion</u>

The American Fire Policy includes an Exclusion of Loss Due to Virus or Bacteria Endorsement (the "Virus Exclusion").  (American Fire Policy, Form CP 01 40 07 06 (Docket No. 7-2 at 109 of 167).)  The Virus Exclusion specifically applies to "forms or endorsements that cover business income, extra expense or action of civil authority."  (<u>Id.</u>)  The Virus Exclusion states that American Fire "will not pay for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease."  (<u>Id.</u>)  American Fire argues that we should grant its Motion for Judgment on the Pleadings even if the Complaint states actionable claims for declaratory and injunctive relief under the American Fire Policy's Business Income (And Extra Expense) and Civil Authority Coverage Forms because the Virus Exclusion bars Spring House's claims for coverage.

"Numerous courts, applying Pennsylvania law, have thoroughly addressed arguments regarding the Virus Exclusion's applicability to insurance claims based on COVID-19 shutdowns. These cases have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage."  <u>Hair Studio 1028, LLC</u>, 2021 WL 1945712, at *11 (listing cases); <u>see also</u> <u>Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co.</u>,  Civ. A. No. 20-3342, 2020 WL 7024287, at *3 (E.D. Pa. Nov. 30, 2020) (stating that "[t]he Virus Exclusion applies to 'loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease'" and concluding that "it applies to Covid-19, which is caused by a coronavirus that causes physical illness and distress." (second alteration in original) (citing <u>Brian Handel D.M.D., P.C.</u>, 495 F. Supp. 3d at 100)); <u>Wilson</u>, 492 F. Supp. 3d at 429 (granting motion

to dismiss claim for breach of insurance contract seeking coverage of losses due to governmental closure orders issued in connection with the COVID-19 pandemic where "an unambiguous virus exclusion in the Contract applie[d] and none of the specified causes of loss in [an exemption to that exclusion] could plausibly apply to Plaintiffs' case").

The Complaint alleges that Spring House's losses arose from the COVID-19 pandemic and the Governor's COVID-19 Orders.  (See Compl. ¶¶ 24, 28.)  "[T]hose closure orders were designed to prevent exposure to COVID-19 and the spread of the virus.  Those orders would not have been issued but for the '[p]resence, growth, proliferation, [or] spread' of the coronavirus."  Moody, 2021 WL 135897, at *9 (second and third alterations in original).  Thus, "[e]ven if the virus was not the direct cause of its losses, it was at least an indirect cause, which is sufficient to bar coverage under the Virus Exclusion clause."  Id.; see also Humans & Resources, LLC, 2021 WL 75775, at *7 (stating that "even if coverage would have been afforded to Plaintiff under the language of the policy issued to it by Defendant, the Virus Exclusion would have otherwise extinguished it"); Kahn, 2021 WL 422607, at *9 (observing "that 'several courts within this Circuit have [] concluded the language of the [Virus Exclusion] is not only unambiguous, but unambiguously bars coverage for COVID-19-related losses'" (first alteration in original) (quoting Frank Van's Auto Tag, 2021 WL 289547, at *8)).

Spring House does not argue that the Virus Exclusion in the American Fire Policy is inapplicable to its claims for the loss or damage it has suffered as a result of COVID-19 and the Governor's COVID-19 Orders.  Rather, it contends that the Virus Exclusion does not eliminate coverage for its "continuing normal operating expenses" under the Business Income (And Extra Expense) Coverage Form because continuing normal operating expenses are not a loss or damage. Spring House maintains that it is reasonable to interpret the term "continuing normal operating

expenses" to refer only to expenses and not to anything that could be characterized as loss or damage. Spring House cites to no authority to support this argument.

Spring House's argument was rejected by the <u>Toppers Salon</u> Court. The plaintiff in <u>Toppers Salon</u> "argue[d] that the [virus] exclusion does not extend to claims for continuing expenses because those expenses are not a 'loss' or a 'damage.'" <u>Toppers Salon</u>, 2020 WL 7024287, at *3. The <u>Toppers Salon</u> Court found that this "argument ignore[d] both the Policy's language and structure." <u>Id.</u> Analyzing the language and structure of the insurance policy in that case, the court determined that the "plain and ordinary meaning" of the term "loss" encompasses "[b]oth the failure to collect income and the payment of continued expenses." <u>Id.</u> We agree and find that Spring House's interpretation of "continuing normal operating expenses" ignores the language of the American Fire Policy and is not a reasonable interpretation. We therefore conclude that the Virus Exclusion applies to Plaintiff's claim for the payment of its continuing expenses under the American Fire Policy's Business Income (And Extra Expense) Coverage Form.

We thus conclude, to the extent that Plaintiff seeks a declaration that it is entitled to coverage, and an order enjoining American Fire from denying coverage, for its loss and damage, including continuing expenses, arising from the COVID-19 pandemic and the Governor's COVID-19 Orders under the Business Income (And Extra Expense) and Civil Authority Coverages of the American Fire Policy, that any such coverage is excluded by the Policy's Virus Exclusion.

## IV.    CONCLUSION

For the foregoing reasons, we grant American Fire's Motion for Judgment on the Pleadings in its entirety. An appropriate Order follows.

BY THE COURT:
/s/ John R. Padova
_____
John R. Padova, J.